My name is Amos Lawrence and I represent the native of Lopez Grotas, a native and citizen of Guatemala, whose application for withholding of removal was denied on the combined grounds that there was insufficient evidence of statutory motives for his persecution, and in the alternative, than any presumption to which he might be entitled as a victim of past persecutions rebutted by state or country conditions. Concerning first the question of statutory motives, our position, the petitioner was kidnapped by Oprah Gorillaz, in part because his imputed political opinion is predominantly based on a 2004 decision of this court, Garcia-Martinez-Ashcroft 317, Fed 3rd 1066, which involved the rape of a Guatemalan woman by Guatemalan soldiers, and although the victim never stated her opposition to the soldiers or the government, and the soldiers never indicated a political motive behind their rape of her, this court reasoned nevertheless these soldiers were motivated by their parent desire to punish this woman as an indigenous woman. Counsel, I think I wrote that opinion. Well, excellent, Judge. Well, maybe you won't think it's excellent when I ask you this question, but I think that was a little different because the whole village was thought to be sympathetic to the Gorillaz, and so there was a constant, there was recurring visitation. Well, it is true, and I think Your Honor recognized that that was a mistaken belief, in part, and additionally, Right, but there was evidence in the record imputing to these villagers' sympathy with the Gorillaz, and that's why they were visited on regular occasions, sometimes to take men from the village to serve as soldiers, and other times to brutalize and rape the women of the village, and ultimately, the petitioner was the target, but there was a clear pattern of targeting this village because of their purported sympathies, so how does that help you in this case? Well, in part, because I think your decision was premised on, one, a recognition the Civil War was split among ethnic lines, with the Guatemalan Gorillaz being almost entirely indigenous people, and the key point of the case, the key point of the case was that this village was thought to be sympathetic to one side or the other, and so that was a political opinion that was imputed to the entire village, and that component is missing here. Well, that's correct, Your Honor, but you did recognize in that decision that it was more than mere coincidence that they targeted these indigenous women, and my position is it's more than mere coincidence that every one of these enslaved laborers, the Gorillaz, was of Hispanic origin. Where is it in the record that every one of the enslaved villagers was of Mexican ancestry? That was my client's testimony. If I can look real quick. I have at the administrative record 112. Okay. None of the prisoners, including Mr. Rodas, was indigenous, and almost 100% of the Gorillaz were. Which of the five bases do you rely on, the race or national origin or political opinion? Imputed political opinion, and the predicate for that is race, so there is a little bit of an overlap there, but our implication is, is that with the Civil War being split among ethnic lines, that the barbaric treatment of exclusively individuals of Hispanic descent was predicated in part upon their assumed political opinion or allegiance to the government. In addition to that, Justice Kagan, I would like to ask you, in addition to that, Mr. Lawrence, as I read your brief, it turns on the proposition, your proposition that the evidence would support an inference that Lopez Rodas was persecuted because he was Hispanic and thus pro-government. But it seems to me that that is not the question that we have to decide, which is instead whether the I.J. was compelled to find that. Sure, he could have, but was he compelled to? Well, this is a question of law, not a question of facts. Our position is you have to know. How do you get that? The operative standard is whether the I.J. was compelled to come to a different  I don't agree with that, Your Honor. That's when you're based on a substantial evidence standard. When you have a, when the issue is exclusively one of statutory motives, that's a question of law, which this Court is not bound by the I.J.'s decision. What's the question of law? The question of law is, is there? I'm saying he could have, the I.J. had before him enough evidence, which, as your brief puts it, he could have found that Lopez was persecuted on account of his being Hispanic and pro-government. He didn't. So my question is, was he compelled to? Well, I'll make two points on that, just to continue along the line. In Ramadan v. Gonzalez last year, this Court determined that the question of statutory motives for persecution was a question of law, which would be considered under the REAL ID Act by this Court. If the facts are undisputed. Sure. The facts in this case are undisputed, that they were 100 percent Hispanic. Could we go back to the record, page 112? Sure, Your Honor. And show me on that page where the testimony is that 100 percent of the captives were Hispanic. Your Honor, I might have to come back with you and rebuttal on that and search the record further, but I'm pretty confident that it says that and that the I.J. recognized that fact. That's the citation you gave. I realize that. I'm just taking from my brief, which maybe was incorrect. There are other additional evidence of statutory motives, which our position is the immigration judge didn't consider in this case, and that's my client's specific statements that he was against the guerrillas when he was asked to go kidnap others. So in addition to the circumstantial inference based on the ethnic background of my client, there are also statements that he specifically indicated he was against what the guerrillas did, and he was punished for that. Our position as the immigration judge, by focusing exclusively on the motivation for actually kidnapping him, didn't focus, didn't give any attention to that evidence, which augments our position that there were political motives behind his overall persecution, which did not only include the kidnapping but the subsequent mistreatment. The BIA did not consider alternative claim that my client's opposition to participating in alternative grounds for relief, and we'd ask that the case be remanded in the event that you find there are not sufficient evidence of political motives, be remanded for that purpose. What do we do about the change of conditions? Our position is that that is controlled by your previous decision, Lopez v. Ashcroft at 366-799, which also involved a claim against ORPA guerrillas that occurred prior to 1992, and which was also based on two observations, one of which was the guerrillas were disbanded, and the second was the absence of evidence that they pose a threat to him now. This Court determined in Lopez that that was insufficient analysis because it neglected to acknowledge the ambiguity of the documentary evidence regarding country conditions, and it failed to give the individual analysis to my client's claim. If there are no further questions, thank you, Your Honor. Thank you. Stripley. May it please the Court. Brianna Stripley on behalf of the Respondent in this matter, the Attorney General.  I guess there's no doubt that there's horrible persecution, and that it was found to be credible. So we have the about as bad persecution as I've read for a long time. So we're then dealing with the fact that there's no doubt that the record compels us to believe that there was persecution. And I'm just wondering if you have any comment on whether it was because of either political opinion or racial or point of origin. Correct. As the immigration judge actually made a finding that he did suffer past persecution, the government's stance is not that what he suffered wasn't atrocious. However, under the statutory regime, it must be, two things must be proven, not only that he suffered persecution that rose to the level of harm, but also that has to be on account of one of five statutorily protected grounds. And, you know, under this standard of review, they have to show that it compels that finding. And in this case, it's just not there. Rather, the immigration judge's finding that Petitioner was ineligible for withholding of removal because he was targeted as a source of labor, not on account of a protected ground, is supported by substantial evidence. Furthermore, the immigration judge's alternative finding that there were changed country conditions and Mr. Rodas could relocate is supported by substantial evidence. According to Petitioner, the guerrillas overtly told him that he was going to be subjected and taken overtly for his purpose to be solely for labor. I quote, The guerrillas explained to us that we would be working to support them, that we would be required to wash their clothes, collect wood for their fires, cook their meals. The guerrillas also stated that if they did not accept their rules, that they would be punished, for that reason. It is also Petitioner's own advice. I'm sorry. Why did they happen to pick him? Again, this is not necessarily in the record. It could be a bunch of reasons, but as a source of labor, is supported by substantial evidence. He even said by his own admission in his testimony that they just wanted us to work for them. Although this is not a typical conscription case, it is similar to Elias Zacharias in that that court, the Supreme Court found that it kidnapped to fill the ranks, basically, so that they could carry on the war against the government and pursue their political goals. But this did not amount to persecution in that instance because this focuses on the guerrillas' political opinion and not Petitioner's. And the same is here. He was really taken and kidnapped so that he could help them fill their ranks and do basically their labor, their hard work. Again, he was taken for three months captive and no political dialogue was ever expressed. Petitioner's theory that the on-account of imputed political opinion started when they refused to kidnap more captives is not supported by the evidence. The punishment was for the refusal to follow the orders. Again, the purpose is obedience, subservient. When they're taken as these captives, they have to keep them in line. They were warned before that if they did not accept their rules that they would be punished. When they were asked by the guerrillas why he was being beaten, the guerrilla could have told them, you know, for your political opinion, for your pro-government sentiments, but instead he was told because he did not follow the rules. The record also does not compel the conclusion that Petitioner's refusal amounts to an expression of political opinion that can be imputed to him. First off, the statement itself is on the first refusal, it was, quote, on Administrative Record 97, we said that we didn't want to help them that way. On the second refusal, Carlos, who was one of the three that were taken, said, quote, that he didn't want to do the things that they did. He was against what they did. Petitioner said, I also said that I was against the things that they did. Petitioner relies heavily on this particular statement to say that this was the imputed political opinion, that at this point the guerrillas imputed that political opinion to him and persecuted him because of that. However, in his sworn statement, the statement was different. On AR-189, it was, quote, Carlos immediately told them that he didn't want to do those kinds of things. And after, I said that I also didn't want to go. Again, this is really the isolated criminal act of going out and getting more captors to put them in the situation that they've been put in, that they refused to want to go and do that, that isolated criminal act. It wasn't an expression of political opinion. And it does not, the record does not compel a finding that that was the case. Again, the statement itself is ambiguous, and to perform this one isolated criminal act. The context also needs to be taken into account, because this is how the I.J. evaluated it. All three agreed that they wouldn't do anything further for the guerrillas. He said that we defied them not because we were brave, but because we were worn out. This goes to show that this was the labor, that they were physically exhausted and could do nothing further. The abuse that was persecuted was stemmed from them ceasing to do work and their defiant behavior. As the Supreme Court noted, there's a variety of reasons to resist recruitment, and same as there would be a variety of reasons to refuse to kidnap. Again, the petitioner in this instance wants you to draw the inference that this was done based on an imputed political opinion. Particularly he relies on the ethnicity. However, it's under the imputed political opinion stance. So essentially the theory goes that because he's Hispanic, he's pro-government, and therefore they imputed that political opinion upon him. However, I would just like to point out that there is nothing in the record that goes to the demographic of the captives. Absolutely no evidence supports that. And even if it was, it says almost 100% of the guerrillas were indigenous Guatemalans, almost 100%. It may seem like splitting hairs, but even if one of those, if 99 were and one wasn't, that kind of puts a wrench in that theory. But to the extent that this Court could possibly find that there may be another inference from this, that is not enough. Again, to the extent there are two reasonable inferences can be made, we must defer to the IJ's decision as this Court held in Prasad. Although a reasonable fact finder could have found contrary to the Board, we are not permitted to substitute our view of the matter of that Board. Again, I would just like to emphasize that this record does not compel a finding. And finally, to address the second alternative IJ's finding, that there had been changed country conditions and that Petitioner could relocate. Again, the standard that this Court uses is that there has to be an individualized analysis conducted. And in this case, there was. The IJ did note that the Civil War is over and that the peace accords were signed in 1996. And unlike in Rios, where that conclusory statement was all that there was, in this case, he went further. The immigration judge found that there was no evidence that former guerrillas are retaliating against former Hispanic captives for any other reason. And similar to this Court's holding in Gonzales-Hernandez, where the country reports were enough to rebut the fact that there wasn't a well-founded fear of future persecution, they also found that the absence of information in that report is persuasive, that it is no longer an issue. Furthermore, they found that there's been no contact for 11 years, since 1992, and it indicates that it's no longer a problem. And again, in Gonzales-Hernandez, they also found this, except it was 10 years, so even less in that case. And in 1992 to 1996, they did not seek him. Even when the civil war was ongoing. So now, after the peace accords, after the guerrillas have been disbanded, it's even less likely that this would be the case. The immigration judge also noted about the guerrillas' chance of locating him, which was one of the fears. And he quotes, The profile states ability of the guerrillas to track adversaries from one part of the country to another was limited by terrain and communication, and the component groups of the guerrillas generally operated to different regions. Again, this is a narrowly tailored, based off of Petitioner's circumstances. It's individualized enough to sustain this. Although our position is that he still didn't establish past persecution on account of an imputed political opinion, the IJ's alternative finding is also supported by substantial evidence. Finally, even in INS Viventura, the Supreme Court held that it's entirely appropriate for the agency to bring its own expertise to bear on this matter and decide which portions of a report are relevant to the applicant. Petitioner had three opportunities to present his claim that there was a clear probability that his life or freedom would be threatened on account of an imputed political opinion if returned to Guatemala. All three adjudicators found that Petitioner failed to demonstrate this. Now, before this court, Petitioner must show that the record compels a finding that he suffered past persecution on account of an imputed political opinion and that there have been no changed country conditions. Relying primarily on this one ambiguous statement and a suspicion about ethnicity, he has simply failed to do so. If there's no further questions, I'd like to submit on the brief. One of the things that bothers me is it's clear there was very serious persecution. There is a doctrine of humanitarian asylum or withholding, and that, I guess, was not raised. But the idea is that the persecution was so bad that if it gets sent back, it's unconscionable, particularly probably so because of the fact that he might be able to identify the people who persecuted him and would therefore be threatened. But I guess that humanitarian aspect was not raised. Yes, that's correct. That, as well as any claim against protection for convention against any cat claim, basically, was also not raised to the board and, therefore, not exhausted and also not raised in the opening brief to this Court and is, therefore, waived. In conclusion, this Court should deny the petition for review. Thank you. Thank you, Mr. Warren. Thank you. In response to the question of what's the basis for a claim that all the captives were Hispanic, it actually is on page 112. When he was asked if they were ever asked to join them, he said no, because we were not indigenous people. And then the question was asked, well, were the guerrillas indigenous? Yes, almost 100% of them were. It doesn't say that all of the captives were of Mexican extraction. That does not say that. Well, I interpreted that when he said because we were not indigenous people that he was referring to. We can be, too, not everyone. Well, Judge, I'm not going to debate the point with you. That was that you asked for a debate. That makes the point that the evidence does not compel a finding of persecution because that testimony does not clearly establish that all of the prisoners were of Mexican heritage. Of Hispanic heritage. Or Hispanic heritage. No, it doesn't come. I thought you said they were of Mexican heritage as opposed to Guatemalan. Wasn't that your argument? Well, Hispanic. Your Honor, I disagree. I believe that's unambiguous, we were not indigenous people. But moreover, as it was previously said, there were other events in which he specifically said, he and two others, that they were against the guerrillas and what they did, and they refused to participate in the kidnapping of other individuals, having previously participated in forays for food and things. I understand your argument. Concerning the issue of changed country conditions. Thank you. Sorry, your time is up. We certainly understand your position. Thank you.  My next here argument is the Nod versus Gritner.
judges: Hug, Rymer, Rawlinson